UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MICHAEL W. LOWE** | **CIVIL ACTION NO. 3:13-cv-1265** |
| **LA. DOC #107393** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **BRIAN UBANKS, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Michael W. Lowe, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on May 28, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana and he complains of conditions of confinement at that institution. He sued corrections officers and health care professionals at the prison and seeks compensatory damages for pain and suffering. Plaintiff has also filed a Motion to Stop Harassment [Doc. 5] and a Motion for Stamps, Paper, and Envelopes. [Doc. 6] This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.  It also appears that plaintiff's Motions [Doc. 5 and 6] should be **DENIED.**

*Background*

Plaintiff is an inmate in the custody of Louisiana's DOC. He is incarcerated at the FPDC. On the morning of April 16, 2013, plaintiff was transported by corrections officers to the E.A.

Conway Hospital in Monroe where he had hernia repair surgery. Plaintiff was discharged back to the prison that afternoon with instructions from the treating physician to refrain from lifting anything heavier than a gallon of milk.[1] Plaintiff was housed by himself in Cell 137 and allowed to use the shower located in the booking area of the jail.

On April 22, 2013, several female inmates were booked into the jail and Captain McMurray advised plaintiff that he would have to vacate Cell 137. Plaintiff was instructed to gather his belongings while McMurray attempted to find suitable accommodations. McMurray then assigned plaintiff the bottom bunk of Cell 177 which also housed inmate Richard Rockhill. While McMurray was in Cell 177, Lt. Ubanks came to Cell 137 and told plaintiff to take his mat and belongings to his new Cell assignment. Plaintiff advised Ubanks twice that he was not supposed to lift anything but then did as he was instructed. (Plaintiff did not allege whether the personal belongings and mattress weighed in excess of 8.5 lbs.) When he arrived in the vicinity of the supervisor's office, McMurray saw him carrying his belonging and immediately told him to put everything down; he then berated Ubanks and Sgt. Price and ordered them to carry plaintiff's property to Cell 177.

On April 24 or 25, 2013, plaintiff "started getting infected" and swollen. (Plaintiff believes that this condition was the result of having to carry his gear.) Nurse Dana and Sonya advised Warden Lee of plaintiff's condition. On April 25, 2013, Warden Lee came to Cell 177 to speak to inmate Rockhill. Plaintiff advised the Warden that he intended to submit an Administrative Remedies Procedure (ARP) grievance and the Warden advised him to send it to

---

[1] A gallon of milk weighs approximately 8.5 lbs. See http://www.ask.com/question/weight-of-a-gallon-of-milk

him. On April 26, 2013, plaintiff gave his grievance to Sgt. Killingsworth.

Plaintiff claims that after the incident of April 22, he "hurt constantly on the inside of [his] stomach [where] [he] had the surgery." On May 1, 2013, plaintiff was again transported to the hospital. He advised the physician of what had happened on April 22.  Thereafter, the physician removed the staples binding plaintiff's surgical wounds and discharged plaintiff back to the jail with instructions to refrain from lifting for another month. He otherwise had no comment about the April 22 incident or plaintiff's alleged infection.

On May 6, 2013, plaintiff was transferred from Cell 177 and returned to F-Dorm. Since there were no bottom bunks available plaintiff was required to sleep on the floor.

On May 13, 2013, plaintiff complained of pain in his stomach and infection. He was apparently examined by a nurse who opined that what he was experiencing was normal; however, plaintiff believes that the pain is directly related to the April 22 incident when he was made to pick up his mat by Lt. Ubanks.  (On some unspecified date plaintiff claimed that the nurses advised all corrections officers that plaintiff was to refrain from heavy lifting.)  Plaintiff was thereafter provided Ibuprofen twice a day for pain.

Plaintiff complains that neither the Warden nor the Sheriff have responded to his ARP and that he now feels a "sticking" pain at the surgery site making it more and more difficult for him to get up from the floor.

On June 11, 2013, plaintiff filed a Motion advising that Warden Lee spoke to him on June 3 and June 7 "trying to make deals with [plaintiff] ... for [him] to drop the complaint against Lt. Eubanks..." [Doc. 5] In a separate motion filed the same day he asked the Court to order the Warden to provide free postage (beyond the 2 stamps/ month that he is presently provided by the

jail) and supplies (paper and envelopes) so that he can send "needed paper work to this Court." [Doc. 6]

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity who has been permitted to proceed *in forma pauperis*. Accordingly, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Since he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v.*

*Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

*2. Medical Care and Conditions of Confinement*

Plaintiff is an inmate in the custody of the LDOC. He complains about the conditions of confinement and he also implies that he is receiving inadequate medical care. The constitutional right of a convicted prisoner to safe and sanitary conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for

any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in his pleadings.

Indeed, by his own admission, between the date of the surgery, April 16, 2013, and the date he filed suit, May 28, 2013, a period of a little more than one month, plaintiff was seen by health care providers both at the FPDC and the E.A. Conway Hospital. Plaintiff complained to both about continued pain and discomfort at the site of his surgery; however, it appears that the nurse was of the opinion that such pain and discomfort was a normal part of the healing process, and the physician who examined him apparently was not alarmed and appears to have been of the opinion that no further treatment was necessary. It is manifestly obvious that plaintiff simply disagrees with the decisions of these health care professionals who are now responsible for his treatment. Plaintiff's disagreement with their diagnosis and treatment choices does not establish deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

In addition to his general claim concerning medical care, plaintiff also claimed that he was injured when defendant Ubanks ordered him to move his personal property and bedding to another cell in violation of the physician's orders. Plaintiff claims that he twice advised Ubanks of the physical restriction, but Ubanks ignored him. Nevertheless, the facts alleged simply do not establish deliberate indifference on the part of Ubanks or any other defendant. At worst, it appears that Ubanks was negligent when he failed to inquire further concerning plaintiff's

limitations; surely he should have known that plaintiff was under some restrictions following surgery. Nevertheless, to the extent that Ubanks's actions establish negligence, plaintiff still fails to state a claim since deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed</u>, <u>and that they drew that inference</u>. *Id.* at 837. Plaintiff has not established deliberate indifference on the part of Ubanks.

Further, other than his conclusory and self-serving allegations, plaintiff has not identified any "serious harm" that has befallen him as a result of the defendants' actions. Plaintiff claims that the surgical site was infected, but he does not demonstrate that the infection was in any way related to the incidents complained of.

In short, plaintiff failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint for failing to state a claim for which relief may be granted.

### 3. Grievances

Plaintiff also complained that his grievances were ignored. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or

regulation, without more, does not violate constitutional *minima*. See *Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim").[2] Since there is no constitutionally protected right to participate in a prison grievance procedure, plaintiff's complaint, insofar as he complains about the lack of an available grievance system, fails to state a claim for which relief may be granted.

*4. Motions*

Plaintiff also moves the court to order Warden Lee to stop his harassment of the plaintiff. In the motion, plaintiff describes the alleged harassment as efforts on the part of Warden Lee "to make deals with me in order for me to drop the complaint." Plaintiff is entitled to relief under Section 1983 if he can demonstrate a violation of the Constitution and laws of the United States

---

[2] See also *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); (see also *Jones v. North Carolina Prisoners' Labor Union, Inc*., 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

by a person acting under color of state law. Here, plaintiff has alleged that Warden Lee made offers of settlement. Clearly that does not establish a Constitutional violation. Further, even if the Warden made threats, a claim neither asserted nor implied by the plaintiff, such threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir.1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.1983); *Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5 Cir.1993), *Siglar v. Hightower*, 112 F.3d 191 (5 Cir.1997. Plaintiff has not demonstrated that the complained of acts of Warden Lee amount to a Constitutional violation and therefore his motion should be denied.

  Plaintiff also seeks an order directing Warden Lee to furnish additional postage and supplies. In his motion plaintiff implies that he was, or will be, denied his constitutionally protected right of access to the courts if his motion is denied. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th

Cir.1996). Plaintiff's pleadings have not demonstrated that his ability to prepare and transmit necessary legal documents to the court has been curtailed. In the instant civil action he has submitted a complaint, an application to proceed *in forma pauperis* and two motions. Further, by his own admission, he was provided the forms, paper, writing implement, and postage necessary to convey these documents to the Court.

In addition, in order for him to state a claim that he was denied his constitutional right of access to the courts, he must also "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. In other words, plaintiff, at the very least, must show that he was prevented from filing a non-frivolous pleading. He presents no such claim.

Plaintiff has not been denied access to the courts either with regard to the litigation of this or any other *pro se* civil rights complaint. Plaintiff has not demonstrated that his efforts to litigate this complaint, or any other civil action, have been hampered by a lack of supplies or postage and therefore his motion is without merit.

### *Conclusion, Order, and Recommendation*

Therefore,

Plaintiff's Motion to Stop Harassment [Doc. 5] and his Motion for Stamps, Paper, and Envelopes [Doc. 6] are **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be

granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, June 13, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE